IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK F., a Minor, by his Parents and Natural Guardians, et al.,** | : | **Civil No. 1:06-CV-1463** |
| **Plaintiffs,** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **RED LION AREA SCHOOL DISTRICT,** | : | |
| **Defendant.** | : | |

**M E M O R A N D U M**

Before the court is Plaintiffs' Motion for a Preliminary Injunction (Doc. 2). The parties have briefed the issues and the court held a preliminary injunction hearing over the course of three days, on August 8, 16, and 23, 2006. Thus, the matter is ripe for disposition. For the reasons that follow, the court will grant the motion in part.

## I. Background

This matter arises out of a dispute over whether Defendant, the Red Lion Area School District (hereinafter "Red Lion" or "the School District") complied with various statutes and administrative orders regarding the School District's provision of special education services for Derrick F., a 9-year old who is deaf-blind.[1]

[1] Derrick is classified as deaf and blind, but has some limited visual and hearing abilities and is able to communicate through what is termed "total communication" – the combined use of sign language, touch, speech, pictures, and print.

## A. Factual Background

### 1. Derrick's Prior Education History

Prior to September 2004 Derrick was enrolled in school in Red Lion but was placed in a residential program for children with deaf-blindness at the Perkins School for the Blind (hereinafter "the Perkins School" or "Perkins") in Massachusetts. In September 2004 Derrick bit a teacher at Perkins and was going to be subjected to a communicable disease test, per the school's policy. (Tr. Day One[2] 10:21, 37:25-38:5.) Derrick's parents subsequently withdrew him from the Perkins School on September 12, 2004. (*Id.* 10:25.)

Derrick's parents then sought to enroll Derrick in his regular school within Red Lion in October 2004. After a number of meetings and evaluations of Derrick, which took place throughout 2004 and 2005, the School District's recommended placement was the Maryland School for the Blind (hereinafter "MSB"), an out-of-district private school. Derrick's parents continued to reject Red Lion's proposals regarding MSB and seek placement in Derrick's home school, the school he would attend if he were not a student with a disability. In December 2005, Derrick's parents began to develop an in-home program for Derrick.

### 2. Administrative Proceedings

Derrick's parents ultimately filed for a due process hearing, which was held over the course of four days in September and October 2005. One of the issues submitted for consideration at the hearing was the appropriate prospective

[2] Because the preliminary injunction hearing took place on three non-consecutive days, the court will cite to the transcript as follows: August 8, 2006 (hereinafter "Tr. Day One"); August 16, 2006 (hereinafter "Tr. Day Two"); and August 23, 2006 (hereinafter "Tr. Day Three").

placement for Derrick.[3] (Ex. P-3 at 6.) Special Education Hearing Officer Gregory J. Smith issued his decision on October 31, 2005, finding that "[t]he appropriate placement for [Derrick] is the school he would normally attend if he were not a student with a disability." (*Id.* at 18.) The Hearing Officer also ordered Red Lion to have a program and placement in place for Derrick within thirty school days of the receipt of the decision. (*Id.*)

In November 2005, both parties filed exceptions to the Hearing Officer's decision; Red Lion's exceptions pertained to the parts of the findings and order that dealt with Derrick's placement. On December 16, 2005, a Special Education Appeals Panel affirmed the Hearing Officer's determination that the appropriate placement for Derrick would be in his regular education school within Red Lion. (Ex. P-4.) Neither party appealed the decision and order of the Appeals Panel.

The Appeals Panel issued its decision either just before or during Red Lion's break for the winter holidays. Witnesses for the school district testified regarding the changes they began making to the school and their efforts to work with Derrick's parents when making related decisions and in the development of a new Individualized Education Program[4] ("IEP") for Derrick over the following months. (*See, e.g.* Tr. Day Two 83:5-87:4.) However, the parties agree that Derrick

---

[3] The other issues are not relevant to the instant inquiry.

[4] The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, provides that an IEP must be prepared by a team primarily comprised of the parents of a child with a disability, at least one regular education teacher, at least one special education teacher, a representative of the local educational agency, and, where appropriate, the child. 14 U.S.C. § 1414(d)(1)(B). Section 1414(d) provides detailed instructions regarding what an IEP must contain and the procedures that must be followed when developing an IEP.

did not attend school when it was back in session in January 2006, or within thirty school days after the Appeals Panel's decision.

In March 2006, Derrick's parents filed a complaint with the Division of Compliance of the Bureau of Special Education of the Pennsylvania Department of Education ("PDE") requesting that PDE order Red Lion to comply with the Hearing Officer's decision. Shirley K. Curl, Ph.D., Special Education Advisor for PDE, subsequently sent a letter dated March 21, 2006, to Janet Stocco at the Education Law Center that summarized the actions taken by the School District in the early months of 2006. (*See* Ex. P-7.) Dr. Curl noted that Red Lion's superintendent signed an Assurance for the Implementation of Appeals Panel Decision on February 8, 2006, and sent it to the Office of Dispute Resolution, indicating that Derrick had been assigned to a classroom and the transition process had begun. (*Id.* para. 3.) Dr. Curl further noted that Red Lion's planned placement called for education in the regular second grade classroom with private instruction in a resource room for some components, with education services anticipated to begin on March 21 and March 24, 2006. (*Id.* paras. 3-4.) Dr. Curl also acknowledged that a facilitated IEP meeting had been held on February 17, 2006, although the IEP was still in draft form and missing measurable goals and objectives. (*Id.* para. 3.)

Next, Dr. Curl stated that Red Lion had not complied with the Hearing Officer's decision by providing Derrick with a placement and program within thirty days of the decision as affirmed on December 16, 2005. (*Id.* para 5.) She directed the School District to comply immediately and set a deadline of March 31, 2006 to "finish developing" Derrick's IEP. (*Id.* para. 6.) Dr. Curl further directed Red Lion to forward her a copy of the IEP and Notice of Recommended Education Placement

("NOREP") no later than April 10, 2006 (*id.*), although that deadline was later extended to April 24, 2006 (Ex. P-8 at 3).

On June 30, 2006, PDE issued a Complaint Investigation Report ("CIR"). (*See* Ex. P-8.) After setting forth much of the history noted above, the CIR concluded that the School District had not complied with the Hearing Officer's decision because the IEP had not been developed and the NOREP had not been signed within thirty days of December 16, 2006, when the Appeals Panel affirmed that decision. (*Id.* at 4.) The CIR ordered compensatory education for the period from February 8, 2006 to April 3, 2006, but did not provide for further compensatory education because Derrick's absence from school caused the lack of participation in the education program. (*Id.* at 5.)

**3. The IEP and NOREP**

The IEP team met on March 31, 2006. The School District maintains that at the meeting Derrick's parents tabled a number of issues for later discussion. The meeting lasted until 8:30 p.m.; Derrick's mother had to leave a couple of hours early, but Derrick's father was able to stay until the meeting concluded. (Tr. Day Two 56:5-7.) Derrick's parents testified that they believed that the IEP developed at the March 31, 2006 meeting was the "final" IEP. A timeline developed by Laura Fitz, Red Lion's supervisor of special education, notes that a follow-up meeting was scheduled for April 19, 2006. (Ex. D-17.) Ms. Fitz testified that she later cancelled the meeting following a conversation with Derrick's father. (Tr. Day Two 49:21-50:8, 58:6-25.) Subsequent communications illustrate differing views or at least confusion regarding whether the March 31, 2006 meeting yielded a final IEP.

Throughout the preliminary injunction hearing, the parties focused almost exclusively on pages forty-seven and forty-eight of the document discussed at the March 31, 2006 IEP meeting. (*See* Ex. P-5.) Pages forty-seven and forty-eight of the IEP contain a chart entitled "Supports for School Personnel Provided for the Child." (*Id.* at 47.) The first row of the chart on page forty-seven describes a position the parties referred to as a "deaf-blind coordinator." It states, in the "Support" column, that the person serving as the deaf-blind coordinator should be a

> Professional with experience and training in working with children with deafblindness to provide training to regular education teacher, special education teacher, and therapists.
>
> Professional with experience and training in working with children with deafblindness will consult with teachers, therapists, parents, and intervener on an ongoing basis.

(*Id.*) The description also indicates, in the "Frequency" column, the amount and frequency of training that the deaf-blind coordinator will provide to the regular education teacher, special education teacher, and therapists, and how often the deaf-blind coordinator will consult with the teachers, therapists, parents, and intervener. (*Id.*) The columns for "Projected Beginning Date" and "Anticipated Duration" are blank. (*Id.*)

The third row on page forty-seven pertains to an intervener trainer. It calls for an "[e]xperienced and qualified trainer to train intervener" by conducting an

> [i]nitial 5-day training session before the intervener starts, followed by 10-day training while the intervener starts working with Derrick. Then periodic training sessions over the first 6 months of Derrick's program (at least 3 one-hour training sessions). Additional training as needed and determined by the trainer.

(*Id.* at 47-48.) The columns for the intervener trainer's projected beginning date and anticipated duration are also blank. (*Id.*)

In addition to the information contained on pages forty-seven and forty-eight, the IEP includes a projected implementation date of April 3, 2006. (*Id.* at 1.) The copy submitted to the court is unsigned. (*Id.* at 2.) Included with the IEP is a "Transition Plan for Derrick [F.] Dated 3/31/2006" (hereinafter "Transition Plan"). (*Id.* foll. 50.) It designates Susan Prowell as Derrick's intervener starting April 3, 2006 and sets forth the details of Derrick's transition starting with an orientation visit also scheduled for April 3, 2006. (*Id.*) Finally, the IEP indicates that Derrick will spend 21-60% of his time receiving special education outside of the regular education classroom. (*Id.*)

On April 24, 2006, Larry Macaluso, the School District's Superintendent, signed a NOREP (Ex. P-6.), which was then submitted to Derrick's parents for approval. Sherry F., Derrick's mother, signed the NOREP on April 27, 2006. The NOREP references a proposed program for Derrick "as defined in the IEP developed on March 31, 2006." (*Id.*)

**4. <u>Derrick's Attendance</u>**

During the week of March 13, 2006, Derrick and his parents went to his regular school building for a "walk-through." (Ex. D-17 at page 2.) Derrick also attended school on March 16, 17, and 20, 2006, to participate in meetings with members of his education team and explore additional parts of the school. (*Id.*) His parents were present for part of the time. (*Id.*) On March 21, 2006, Derrick attended school where he was observed by additional members of his education team. (*Id.*) His parents were also present for part of this session. (*Id.*)

The next time that Derrick attended school was on April 3, 2006, for another walk-through visit with his parents. (*Id.* at page 3.) Derrick also met with his homeroom teacher and Mrs. Prowell, his intervener. (*Id.*) From April 4, 2006 through April 11, 2006, Derrick attended school, spending half his time in the regular education classroom and half his time in his resource room with Mrs. Prowell or other members of his team. (*Id.*) His parents were also present on these days. (*Id.*) Derrick's presence at school during the time period from April 3, 2006 through April 11, 2006 is consistent with what was set forth in the Transition Plan. (Ex. P-5 foll. 50.)

Derrick has not attended school since April 12, 2006. (Ex. D-17 at page 3.)

**B. Procedural History**

Plaintiffs filed a complaint on July 27, 2006, alleging violations of the IDEA, the Rehabilitation Act of 1973 (hereinafter "Section 504"), 29 U.S.C. §§ 794 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12130 *et seq.*, and 42 U.S.C. § 1983 (hereinafter "Section 1983"). Plaintiffs simultaneously filed the instant motion for a preliminary injunction on July 27, 2006. The preliminary injunction hearing took place on August 8, 16, and 23, 2006.

Plaintiffs seek an order directing Red Lion to: 1) immediately comply with and implement all provisions of Derrick's IEP and the October 31, 2005 order of the Special Education Hearing Officer; 2) obtain, contract with, or hire a professional who is trained and experienced in working with children who are deaf-blind to serve as a deaf-blind coordinator and to train and support Derrick's school team within five days of the court's order; 3) implement the training and support of

Derrick's intervener and school team as set forth in his IEP within ten days of the court's order.

## II. Legal Standard - Preliminary Injunction

The test for whether to grant a preliminary injunction requires the court to consider four factors:

> 1) whether the movant has shown a reasonable probability of success on the merits; 2) whether the movant will be irreparably injured by denial of the relief; 3) whether granting preliminary relief will result in even greater harm to the non-moving party; and 4) whether granting the preliminary relief will be in the public interest.

*ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc).

## III. Discussion

### A. Likelihood of Success on the Merits

One of the factors that the court considers in determining whether to grant a preliminary injunction is whether the moving party has established a "reasonable probability of success on the merits." *Id.* A substantial part of the court's inquiry turns on whether the March 31, 2006 IEP was the final, mutually agreed-upon IEP.

#### 1. Deference to Administrative Findings Regarding Finality of the March 31, 2006 IEP

The court finds that the March 31, 2006 IEP is final, in large part due to deference to the findings of the PDE. A reviewing court bases its decision on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii). However, the court

may not "substitute [its] own notions of sound educational policy for those of the school authorities [that it] reviews" and "must be careful to avoid imposing [the court's] view of preferable educational methods upon the States." *Bd of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206, 207 (1982). Rather, "[t]he primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." *Id.* at 207; *see also Polk v. Cent. Susquehanna Intermediate Unit*, 853 F.2d 171, 179 (3d Cir. 1988).

In addition, the IDEA contains detailed provisions that set forth the required content and procedure for developing an IEP, including provisions that specify the procedure for making changes to an IEP. *See* 20 U.S.C. §§ 1414(d)(3)(D), (F) and (d)(4). "The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought." *Rowley*, 458 U.S. at 206. Accordingly, although the court has questions concerning whether the March 31, 2006 IEP was final, the fact that the PDE determined that it was carries substantial weight. Therefore, the court concludes that the March 31, 2006 IEP was final.

**2. <u>Red Lion's Compliance with the March 31, 2006 IEP</u>**

In order to determine whether Plaintiff is likely to succeed on the merits, the court must next determine whether the school district has complied with the IEP. Although the IDEA does not require that an IEP provide "the best education that money can buy," but rather "a basic level of educational opportunity,"

*Polk*, 853 F.2d at 178, the Act does require compliance with an IEP once it is finalized. The IDEA requires states to provide children with disabilities with a "free appropriate public education" (hereinafter "FAPE"). 14 U.S.C. § 1412(a)(1); *Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 9 (1993). The Act provides that one requirement of an adequate FAPE is the provision of instruction and services that "*comport with* the child's IEP." 20 U.S.C. § 1401(9) ("The term 'free appropriate education' means special education and related services that . . . (D) are provided *in conformity with* the [IEP] required under section 1414(d) of this title.") (emphasis added); *see Rowley*, 458 U.S. at 188, 189, 203.

Moreover, "[t]he IEP is more than a mere exercise in public relations. It becomes the basis for a handicapped child's entitlement to an education in conformance with the IEP, and for a host of procedural rights in the event a child's education deviates from a mutually arrived upon IEP." *Ga. Ass'n of Retarded Citizens v. McDaniel*, 716 F.2d 1565, 1570 (1983), *vacated on different grounds relating to attorneys' fees*. "The [IDEA] provides important procedural rights for the parent and child in the event a child's education deviates from a mutually arrived upon IEP." *Doe v. Ala. State Dept. of Educ.*, 915 F.2d 651, 655 (11th Cir. 1990) (quoting *Ga. Ass'n of Retarded Citizens*, 716 F.2d at 1571). Accordingly, the court may not find that Red Lion has complied with the March 31, 2006 IEP if its efforts fall short of the specifications in the IEP, even if the court finds that the School District has substantially complied.

As noted above, the parties appear to focus on whether the school district has provided a "deaf-blind coordinator," a qualified "intervener," and a

qualified "intervener trainer." The court will address whether Red Lion has complied with each of these requirements in turn.

**a. The Deaf-blind Coordinator**

Mr. Mazreku is the supervisor of hearing and vision support programs for the LIU. In his supervisory position with the LIU, Mr. Mazreku has assumed the role of Derrick's deaf-blind coordinator. In that role he has worked one-on-one with Mrs. Prowell, worked with the specialists assigned to Derrick's program, and consulted with specialists around the country.

Without repeating verbatim all of the experiences and qualifications to which Mr. Mazreku testified at the hearing, the court will note some that are most relevant here. Mr. Mazreku has two associate's degrees; one in interpreting for the deaf; the other focusing on education. (Tr. Day 3 36:15-17.) In addition, he has B.S. in deaf education for children in grades kindergarten through twelfth, and a master's degree in education leadership and policy. (*Id.* 36:19-25.) He is certified as a 1) teacher for education, grades kindergarten through twelfth; 2) supervisor of special education, grades kindergarten through twelfth; and 3) principal in Pennsylvania. (*Id.* 37:7-10.) Mr. Mazreku has worked as an interpreter for the deaf and has also worked with deaf and deaf-blind individuals, including children at the pre-school, elementary, and high school levels. (*Id.* 42:7-9.) He also has experience in tactile communications and sensitivity training in the special education field. (*Id.* 42;10-15.)

Mr. Mazreku has attended a number of conferences and training sessions that focused on deaf-blindness, including one where he served as a deaf-blind "delegate" to assist with mobility and giving deaf-blind individuals access to

the community. (Tr. Day One 59-60.) He has been involved in and participated in a number of training sessions that have been set up for Derrick's education team, including two real-time and interactive Internet training courses conducted by Linda Alsop through the Ski-Hi (pronounced "sky high") Institute at the University of Utah[5] and a three-day training conference that took place in California at the beginning of August 2006.[6] He also testified to a commitment to continue taking advantage of available training in the field of deaf-blindness. The court considers Mr. Mazreku to be a qualified deaf-blind coordinator and, therefore, finds that the School District has complied with those provisions of the March 31, 2006 IEP dealing with that position.

**b. The Intervener**

The School District contracted with the LIU to provide the services of an intervener for Derrick. Derrick's parents learned that Susan Prowell had been hired as Derrick's intervener at the March 31, 2006, IEP meeting. (Tr. Day One 20:19-24.) Derrick's mother testified that they did not agree with the selection of Mrs. Prowell. (*Id.* 21:4-5.) Mr. Mazreku testified that he had interviewed a number of people and made offers to three or four individuals for the intervener position.

---

[5] Each training session lasted approximately three and a half hours. (Tr. Day One 110:3-24; 113:3-5.)

[6] The official title of the California training session, which took place from August 2-4, 2006, is "the 2006 Statewide Summer Intervener Training Institute," sponsored by California Deaf-Blind Services. (Ex. D-6 at page 4.)

(Tr. Day Three 44:18-46:5.) The others declined the offer. (*Id.*)[7] Mrs. Prowell's first day as an employee of the LIU was April 3, 2006.

Mrs. Prowell had previously been Derrick's intervener in his home program. She worked with Derrick for six hours a day, Monday through Friday from January 2005 through May 2005. (Tr. Day Two 152:23-24.) During that same time period Mrs. Prowell worked with Dr. Judy Jones, a private consultant in special education, who was hired by Derrick's parents to help set up Derrick's home program. (Tr. Day One 155:3-12.)

Mrs. Prowell has a sixteen year-old daughter who is deaf and mentally retarded; Mrs. Prowell communicates with her daughter through total communication. (Tr. Day Two 147:6-19.) Mrs. Prowell discussed the need to modify her schedule with Derrick during the summer of 2005 in order to accommodate her daughter's extended school year ("ESY") education needs. (*Id.* 158:18-159:17.) Derrick's mother testified that she fired Mrs. Prowell, (Tr. Day One 43:2-4), while Mrs. Prowell stated that she had not known she had been fired before hearing Derrick's mother's testimony (Tr. Day Two 159:20-25). Both parties agree that Derrick's mother told Mrs. Prowell that her services were no longer needed. (Tr. Day One 43:11-12; Tr. Day Two 213:20-21.)

Mrs. Prowell has taken sign language classes since her daughter was diagnosed at the age of eight months, through the Easter Seals, other local classes, and the Western Pennsylvania School for the Deaf. (Tr. Day Two 148:17-25.) When she interviewed with Derrick's parents in December 2004, she told them that

---

[7] Mr. Mazreku indicated that the other individuals who were offered the position were certified interpreters or fluent signers who may have been most comfortable in post-secondary settings and lacked confidence regarding their abilities to work with Derrick. (*Id.* 46:7-47:10.)

she was not proficient in American Sign Language ("ASL"), but could operate at a conversational level. (*Id.* 151:4-9.) Since that time she has taken an additional "Level Two" sign language class. (*Id.* 161:3, 206:15-207:4.)

Mrs. Prowell has also participated in trainings with other members of Derrick's education team, as well as the Internet training sessions with Linda Alsop, and the August 2006 intervener conference in California. (*Id.* 161:1, 164:23-169:8.) She is planning to take an upcoming course taught by Ms. Alsop. (*Id.* 161:6-8.) She also testified that she has made an effort to educate herself by reading and researching in her personal time. (*Id.* 208:17-209:5.) The court is satisfied that Mrs. Prowell is a qualified intervener and, thus, finds that the School District has complied with the IEP in this regard.

**c. Intervener Training and the Intervener Trainer**

As noted above, Mrs. Prowell has received some training specific to Derrick through her work with Dr. Jones in Derrick's home environment. In addition, also as noted previously, Mrs. Prowell has participated in the Sky-Hi and California training sessions, as well as a number of training sessions with Mr. Mazreku and other specialists on Derrick's team. Such training has clearly been beneficial to Mrs. Prowell and the other members of Derrick's education team, but it is not a substitute for the one-on-one training described on pages forty-seven and forty-eight of the March 31, 2006 IEP.

Derrick has not attended school since April 2006; thus, Mrs. Prowell has not participated in any direct training by an intervener trainer with Derrick in the school environment. However, Red Lion has not identified a specific intervener

trainer to work with Mrs. Prowell.[8] To the extent that the School District has relied upon Mr. Mazreku to fill this role, the court does not find Mr. Mazreku to be qualified to serve as the intervener trainer for the five and ten-day training sessions described in the March 31, 2006 IEP. Therefore, the court finds that the School District has not complied with the part of the IEP pertaining to the intervener trainer. Consequently, Plaintiffs have shown that they are likely to succeed on the merits of their IDEA claim in this respect.[9]

#### d. Summary of Findings Regarding Red Lion's Compliance with the March 31, 2006 IEP

With the exception of the matter of intervener training, the court finds that the School District has complied with the IEP. Throughout the course of the administrative proceedings regarding Derrick's education plan, the School District has continued to participate in the IEP and other meetings, obtain evaluations of Derrick, observe programs in place at other schools, and express its commitment to having Derrick in school in an appropriate program. (*See, e.g.*, Ex. D-17.) The School District and LIU assembled an educational team including the teachers, specialists, and others who would work with Derrick on a regular basis. In addition, Red Lion has pursued the various kinds of training noted above and continues to seek appropriate future training opportunities in Derrick's absence. The court notes that the Special Appeals Panel acknowledged that, although the education plan initially recommended by Red Lion was not consistent with "the strong preference

---

[8] The court notes that Dr. Jones testified that she has been and is available to conduct intervener training. (Tr. Day One 147:3-7.)

[9] The court's finding regarding a likelihood of success on the IDEA claim provides a sufficient ground to support the court's ruling on the preliminary injunction motion; thus, the court will not address the Section 504, ADA, and Section 1983 claims at this time.

under the law to try to educate students in their home school," the School District, as well as Derrick's parents, has gone to "extraordinary lengths" in their efforts to support Derrick. (Ex. P-4 at 17.) The court similarly finds that Red Lion has made extraordinary efforts to support Derrick.

**B. Other Preliminary Injunction Factors**

The court has also considered the remaining three factors that inform the preliminary injunction inquiry. Failure to order an intervener trainer would cause irreparable harm to Derrick and the fulfillment of a workable IEP. The grant of such relief might be of some cost to the School District but will not otherwise cause greater harm to Red Lion. Moreover, based on the testimony and evidence presented at the preliminary injunction hearing, the School District appears to be well-positioned to implement Derrick's program in conformance with the March 31, 2006 IEP. In addition, the grant of this relief is in the public interest to see that Derrick receives an education in the proper setting.

Finally, Defendants argue that the availability of the direct remedy of compensatory education warrants denial of a preliminary injunction here. However, neither the recent related compensatory education award (for the period of time from February 8, 2006 to April 3, 2006), nor any additional compensatory education award would serve as a sufficient means of ensuring that Derrick receives the FAPE to which he is entitled. Compensatory education is not an adequate substitute for hiring a qualified intervener trainer to provide the requisite training as set forth in the IEP.

## IV. Conclusion

In accordance with the foregoing, a preliminary injunction will be issued directing the School District to provide a qualified intervener trainer to work with Mrs. Prowell and Derrick to provide the five-day advance training in the appropriate setting,[10] followed by the ten-day training in the school setting, as specified in the March 31, 2006 IEP. An appropriate order will be issued.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: September 1, 2006.

[10]This is being ordered because of the lengthy absence of contact between Derrick and Mrs. Prowell.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DERRICK F., a Minor, by his Parents and Natural Guardians, et al.,**

**Plaintiffs,**

**v.**

**RED LION AREA SCHOOL DISTRICT,**

**Defendant.**

**Civil No. 1:06-CV-1463**

**JUDGE SYLVIA H. RAMBO**

**O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) Plaintiffs' motion for a preliminary injunction (Doc. 2) is **GRANTED in part**.

2) A preliminary injunction is issued against the Red Lion School District as follows:

a) The Red Lion School District shall provide an experienced and qualified trainer to provide additional training to Mrs. Prowell. Said training shall consist of the five-day advance training in the appropriate setting (with Derrick as necessary),[11] followed by the ten-day training in the school setting with Derrick, as specified in the March 31, 2006 IEP.[12]

---

[11] The court notes that the March 31, 2006 IEP states that the five-day training is to take place "before the intervener starts." Because Mrs. Prowell's has already started as Derrick's assigned intervener, the court interprets the IEP language to simply mean that the five-day training must take place before the ten-day in-school training with Derrick, and in whatever is the most appropriate setting for the five-day training.

[12] Derrick's parents are expected to cooperate with the School District. Ensuring that Derrick attends school is critical to Red Lion's ability to comply with this order. Absent complete
(continued...)

b) Red Lion School District shall comply with this order within thirty days of the date of this order.

c) No further relief is granted.

3) A case management conference will be scheduled by further order of the court to address any issues that remain unresolved in the captioned case.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: September 1, 2006.

[12] (...continued)
cooperation from all parties involved, the IEP cannot be effective. If, after participating in the ordered training and allowing for a reasonable period of time to transition, Derrick shows irritation, anger, stress, or anxiety such that his parents are concerned for his well-being, the court would strongly encourage the parties to re-evaluate Derrick's IEP to determine whether it sets appropriate goals and methods of achieving them. Given the level of commitment and concern for Derrick exhibited by both parties thus far, the court does not anticipate that this will be a problem.