IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DERRICK F., a Minor, by his Parents and Natural Guardians, et al.,** :

        **Plaintiffs,** :

        v. :

**RED LION AREA SCHOOL DISTRICT,** :

        **Defendant.** :

Civil No. 1:06-CV-1463

JUDGE SYLVIA H. RAMBO

## **M E M O R A N D U M**

This case arises out of a dispute over whether Defendant, the Red Lion Area School District (hereinafter "the School District") complied with various statutes and administrative orders regarding the School District's provision of special education services for Plaintiff, Derrick F.,[1] who is deaf-blind. Plaintiffs move for civil contempt, arguing that Defendant has failed to provide ten days of training as required by the court's September 1, 2006 preliminary injunction order. (*See* Doc. 39) Defendant maintains that it has fully complied with the court's order.

The question before the court is whether Plaintiffs have established by clear and convincing evidence that Defendant disobeyed the court's September 1, 2006 order. The court finds that Defendant needs to provide one additional day of the training to satisfy the ten-day training requirement. However, the court also finds that Plaintiffs fail to establish by clear and convincing evidence that Defendant did not attempt to comply with the training requirement in a reasonable manner.

---

[1] The other Plaintiffs in this action are Derrick's parents.

Accordingly, neither a finding of contempt nor corresponding sanctions are justified at this time.  The court will deny Plaintiffs' motion for civil contempt and afford Defendant an opportunity to provide the last remaining day of the ten-day training.

**I.       Background**

A detailed factual background is provided in the court's September 1, 2006 preliminary injunction order (hereinafter "preliminary injunction order") (Doc. 25).  The facts relevant to the instant motion are as follows.

On September 1, 2006, the court granted in part Plaintiffs' motion for a preliminary injunction, and ordered the School District to provide "an experienced and qualified trainer to provide additional training to [Derrick's intervener[2]]," including a five-day training[3] and a "ten-day training in the school setting with Derrick, as specified in the March 31, 2006 IEP."  (Doc. 25.)  The relevant IEP language calls for an

> [i]nitial 5-day training session before the intervener starts, followed by 10-day training while the intervener starts working with Derrick.  Then periodic training sessions over the first 6 months of [Derrick's] program (at least 3 one-hour training sessions).  Additional training as needed and determined by the trainer.

(Pls.' Br. in Supp. Mot. for Prelim. Inj., Doc. 3, Ex. C, at 47.)

---

[2] An intervener is a paraprofessional aide who provides direct and consistent support to a child who is deaf-blind by continuously interpreting and communicating to the child about his environment.  Although Pennsylvania does not officially recognize or provide a certification for persons known as "interveners" it is the term that the parties and the court have used throughout this case.

[3] The five-day training is not at issue here.

Subsequent to the court's preliminary injunction order, the parties' counsel engaged in numerous rounds of correspondence via regular mail and e-mail. What follows is a summary of the substance of those communications.

On September 6, 2006, Plaintiffs' counsel, Mr. McCoy, sent a letter to Defendant's counsel, Mr. Russell, inquiring about Defendant's plan to comply with the preliminary injunction order. (Doc. 40, Ex. A.) Mr. Russell replied via letter dated September 7, 2006, proposing: 1) two individuals (Ms. Penny Telleck and Ms. Jackie Brennan) to conduct the five- and ten-day training sessions for Derrick's intervener; 2) dates for the training to occur, starting on September 13, 2006 and ending on October 2, 2006; and 3) indicating that on September 20, 2006, the School District would begin to implement a transition plan developed on July 20, 2006 (hereinafter "July transition plan"). (*Id.* Ex. B.)

In a letter dated September 12, 2006, Mr. McCoy deemed the proposed use of two intervener trainers to be unacceptable, questioned the qualifications of Ms. Telleck and Ms. Brennan, and disputed Plaintiffs' agreement to the July transition plan. (*Id.* Ex. C.) On September 14, 2006, Mr. Russell replied via letter, stating that Ms. Telleck would be the only intervener trainer[4] and that the School District had not known that Plaintiffs disputed the July transition plan. (*Id.* Ex. D.) That letter proposed a revised training schedule where the five-day training would occur the week of September 18, 2006, and the ten-day training would occur for two days a week for the five weeks thereafter. (*Id.*) Mr. Russell also provided Ms. Telleck's Bio, which included descriptions of Ms. Telleck's education and

---

[4] Ms. Brennan would be retained instead as an additional consultant whose work would not be counted for the purposes of the five- and ten-day training sessions.

experience with dual sensory loss children, and her background in teaching and training within programs for deafblind students.  (*Id.*)

On September 15, 2006, Mr. McCoy sent Mr. Russell a letter that posed additional questions regarding Ms. Telleck's qualifications and requested a meeting with her on, or the week of, September 18, 2006, for the purpose of assessing her qualifications.  (*Id.* Ex. E.)  Mr. Russell replied via letter dated September 21, 2006, and provided direct responses to all of the questions posed in Mr. McCoy's September 15, 2006 letter.  (*Id.* Ex. F.)  Mr. Russell reiterated the School District's concern regarding the apparent dispute over the July transition plan and indicated that the School District was working on an updated plan.  (*Id.*)  Mr. Russell's letter also indicated that Ms. Telleck had met with Derrick's parents.  (*Id.*)

In a letter dated September 22, 2006, Mr. McCoy continued to raise concerns regarding Ms. Telleck's qualifications and requested a deposition so that Plaintiffs could assess them.  (*Id.* Ex. G.)  The letter also referenced a proposed revised transition plan (hereinafter "September transition plan") that the School District had provided to Plaintiffs, but deemed it unacceptable, claiming it was essentially identical to the July transition plan.  (*Id.*)  Mr. McCoy then advised Mr. Russell that Derrick would not attend school until Plaintiffs were satisfied with Ms. Telleck's qualifications and with the transition plan.  (*Id.*)

Ms. Telleck's deposition was scheduled for September 28, 2006 (*id.* Ex. H), but on September 26, 2006, Mr. Russell notified Mr. McCoy via e-mail that Ms. Telleck was ill and needed to reschedule (*id.* Ex. I).  Later that day, Mr. McCoy replied via e-mail that the School District did not need to send a bus to Derrick's house each day because Derrick would not be attending school until Plaintiffs had

4

the opportunity to depose Ms. Telleck. (Doc. 42 Ex. F.) Plaintiffs deposed Ms. Telleck on October 6, 2006, and subsequently agreed that she was qualified to serve as Derrick's intervener trainer. (*See* Doc. 40, Exs. J, K.)

On October 11, 2006, Mr. McCoy sent Mr. Russell an e-mail proposing that Derrick's first day of school be a regular day rather than a transition day, and seeking confirmation that Ms. Telleck would provide ten consecutive days of training. (*Id.* Ex. M.) Mr. McCoy conditioned Derrick's attendance on the School District's compliance with those proposals. (*Id.*) On October 13, 2006, Mr. Russell responded via e-mail, questioning whether the ten days of training had to be consecutive, expressing concerns about proceeding outside of a transition plan, and agreeing to provide Ms. Telleck's schedule later in the day. (*Id.* Ex. N.) On October 16, 2006, Mr. McCoy replied via e-mail, conceding that consecutive days were not mandatory, but continuing to express concern that a schedule of training days proposed in a Friday e-mail from Ms. Say, another of Defendant's counsel, was too spread out.[5] (*Id.*) Mr. McCoy proposed a schedule in which an initial meeting would occur on October 23, 2006, and training would start on October 25, 26, and 27, 2006, then include two or three days of training per week in the weeks that followed until the ten days were completed. (*Id.*)

On October 19, 2006, Mr. Russell replied to Mr. McCoy via e-mail, confirming that Ms. Telleck would be available to train on October 25 and 26, 2006, and indicating that he would get back to Mr. McCoy about October 27, 2006. On October 24, 2006, Mr. McCoy followed up with Mr. Russell via e-mail, inquiring about Ms. Telleck's availability on October 27, 2006, confirming that Derrick would

---

[5] Ms. Say's e-mail is not part of the record before the court.

attend the training on October 25 and 26, 2006, and requesting a final schedule for the remainder of the ten days of training.  (*Id.* Ex. O.)  On October 27, 2006, Mr. McCoy sent another e-mail to Mr. Russell requesting the final schedule.  (*Id.* Ex. P.)

On November 3, 2006, Mr. Russell sent Mr. McCoy an e-mail message providing Ms. Telleck's proposed schedule, which included training on November 9, 10, 16, 17, and 30, 2006, and tentatively on December 1, 7, and 8, 2006.  (*Id.* Ex. L.)  Mr. Russell also indicated that Defendant counted October 4 and 5, 2006, days when Ms. Telleck was present but Derrick did not attend school, towards the ten day training total.  (*Id.*)  Finally, he stated that the School District planned to implement the July transition plan, beginning on November 9, 2006.  (*Id.*)

Mr. McCoy responded by e-mail dated November 6, 2006, disputing whether October 4 and 5, 2006, could count as training days because Plaintiffs had not received notice that Ms. Telleck would be available on those days.  (*Id.* Ex. J.)  Mr. McCoy's e-mail also acknowledged that Derrick would start school under the July transition plan, although he proposed a variation in the plan based on days Ms. Telleck conducted training, maintaining that Derrick was entitled to full days of training under his IEP rather than any partial days provided for at the start of the July transition plan.  (*Id.*)

On November 7, 2006, Mr. Russell sent Mr. McCoy an email with an updated schedule for Ms. Telleck, confirming that she would be available on November 9, 10, 13, 14, 15, 16, and 17, 2006.  (*Id.* Ex. Q.)

On November 8, 2006, Mr. McCoy sent Mr. Russell an e-mail inquiring whether the School District would be using the July or September transition plan and re-stating Plaintiffs' position that Derrick was entitled to full days of training.

(*Id.* Ex. Q.) On November 9, 2006, Mr. Russell responded by e-mail. (*Id.* Ex. R.) Mr. Russell did not respond to the issue of notice regarding Ms. Telleck's availability on October 4 and 5, 2006, but stated only that Mr. McCoy had informed Defendant not to send the bus on those days. (*Id.*) Mr. Russell also noted that a combination of the July and September transition plans was in effect and that he had no confirmed dates for Ms. Telleck to provide training after November 17, 2006.

Mr. McCoy's November 10, 2006 e-mail response expressed Plaintiffs' disagreement with provision of partial versus full days of training and use of a "hybrid" transition plan, and over the counting of October 4 and 5, 2006, as training days. (*Id.*) The parties' November 2006 correspondence also reflects their dispute regarding whether Derrick's presence was a requirement of the ten-day training. (*Id.*)

Ms. Telleck's time log shows that from September 18-22, 2006, she conducted the five-day advance intervener training. (Doc. 42 Ex. A.) In addition it for the most part coincides with the dates noted in counsels' correspondence, showing that Ms. Telleck provided training on November 9, 10, 13, 14, 15, 16, and 17, 2006, as well as on January 18 and 19, 2007, for a total of nine days of training with Derrick and his intervener. (*Id.*) Although the log also reflects training of "interveners" on October 4 and 5, 2006, Ms. Telleck testified at her deposition on October 6, 2006, that she worked with a different intervener on those days and performed no work specific to Derrick. (Doc. 40, Ex. K.)

## II.       Legal Standard – Civil Contempt

Civil contempt sanctions are "penalties designed to compel future compliance with a court order." *Harris v. City of Phila.*, 47 F.3d 1311, 1328 (3d Cir. 1995). In order to establish a basis for civil contempt, a plaintiff must prove, by "clear and convincing evidence," three elements: "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995). Willfulness and intent do not factor into the court's threshold finding of contempt, but are relevant only "insofar as [they] pertain[] to the extent of the sanction to be imposed." *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148-49 (3d Cir. 1994); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt.").

However, "contempt may be found only if [a] party did not diligently attempt to comply in a reasonable manner." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1341 (2d Cir. 1989), *cited in Harris*, 47 F.3d at 1324. The court should not grant a contempt citation "if 'there is ground to doubt the wrongfulness of' the defendant's conduct." *Harris*, 47 F.3d at 1326; *see also Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982) ("The plaintiff has a heavy burden to show a defendant guilty of civil contempt. It must be done by 'clear and convincing evidence,' and where there is ground [t]o doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt."). In addition, "ambiguities must be resolved in favor of the party charged with contempt." *John T. ex rel. Paul T. v. Del. County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003).

Finally, there are two kinds of sanctions for civil contempt: coercive and compensatory. *Harris*, 47 F.3d at 1328. Coercive sanctions are forward-looking and are used to bring a party into compliance with a court order. *Latrobe Steel Co. v. United Steel Workers of Am.*, 545 F.2d 1336, 1344 (3d Cir. 1976). Compensatory sanctions are backward-looking and seek to "compensate the complainant through the payment of money for damages caused by past acts of disobedience." *Id.* Regardless, district courts are granted "wide discretion" to determine a remedy for civil contempt. *Del. Valley Citizens' Council for Clean Air v. Com. of Pa.*, 678 F.2d 470, 478 (3d Cir. 1982); *see also Latrobe*, 545 F.2d. at 1344 (methods employed for civil contempt sanctions are "many and varied").

**III.**     **Discussion**

The parties agree that the first two elements of civil contempt are satisfied here: the court's preliminary injunction order is a valid court order, and Defendant knew about the order. *See Roe*, 54 F.3d at 137. Thus, the question before the court is whether Plaintiffs have adduced clear and convincing evidence that Defendant disobeyed the preliminary injunction order. *See id.* In this regard, Plaintiffs take issue with a number of facets of Defendant's provision of the ten-day intervener training, including the length of the training day (partial versus full) and the location of the training (resource room versus regular classroom), as well as whether Defendant properly calculated Ms. Telleck's work on October 4 and 5, 2006, as training days, and whether Defendant failed to comply with the preliminary

injunction order's October 1, 2006 deadline for training.[6] The court will address each concern in turn.

### A.  Length of Training Day

Plaintiffs argue that the plain meaning of the court's preliminary injunction order and Derrick's IEP require the ten-day training session to consist of ten full days of training such that training provided while Derrick was in school for only a couple of hours on a particular day under the transition plan would not constitute a full day.[7] The preliminary injunction order directed the ten-day training to occur as provided for in Derrick's IEP. However, the language of the IEP fails to specify what constitutes a day of training. In addition, the language provides no insight into whether the training would occur simultaneously with Derrick's transition, or whether any factors that may govern the calculation of days, within the school context generally, or specifically with respect to Derrick, apply. Therefore, the court considers this an ambiguity that it must resolve in favor of Defendant. *John T. ex rel. Paul T.*, 318 F.3d at 552. The court will deny Plaintiffs' motion with respect to the issue of length of training days.

---

[6] The parties' correspondence and portions of their briefs highlight tension regarding Defendant's selection of Ms. Telleck rather than Dr. Jones as the trainer. However, both parties ultimately concede that Ms. Telleck is qualified and Defendant is under no obligation to hire Dr. Jones. Thus, the court will not address this issue. Similarly, the court has noted the facts pertaining to the parties' dispute over the applicable transition plan, but the validity of the transition plan is not an issue properly before the court at this time. The court will only consider the issue of the transition plan insofar as it has any bearing on the court's assessment of Defendant's compliance with the ten-day training requirement. (For example, whether disputes over the transition plan impacted the intended training schedule.)

[7] The court notes that the parties' correspondence reflects some disagreement regarding whether the ten days of training needed to be consecutive. The court will not address this issue because the parties have resolved it on their own.

### B. Location of Training

Similarly, the language of the preliminary injunction order and the IEP are devoid of any specific indication regarding the location of training, aside from the court's designation that the ten-day training occur "in the school setting." The court based the language of its order on evidence produced in connection with Plaintiffs' motion for a preliminary injunction and the corresponding hearing. The court understood that the ten-day training was to occur in school. However, neither the IEP itself, nor testimony regarding the IEP and the training language, gave the court a clear impression regarding whether the resource room is properly considered part of the school setting for purposes of the ten-day training. If anything, the court's interpretation of Derrick's program, and the related resources Defendant has and will provide to him, is that the resource room is part of the school setting. In any event, the court holds that this issue of the resource room is an ambiguity that must be resolved in Defendant's favor. *Id.* Accordingly, the court will deny Plaintiffs' motion with respect to the location of training issue.

### C. Ms. Telleck's Time on October 4 and 5, 2006

The parties also dispute whether the services Ms. Telleck provided to Defendant on October 4 and 5, 2006, count as training days. They do not dispute the fact that Defendant did not inform Plaintiffs that Ms. Telleck would be present in the School District on those days, but the court does consider the lack of notice to be relevant. More important is the fact that. although Ms. Telleck may have been prepared to conduct the ten-day intervener training on October 4 and 5, 2006, her actual work for the School District on those days was not specific to Derrick.

In addition, regardless of the reasons why, it is clear that Derrick did not attend school on October 4 and 5, 2006. The preliminary injunction order unambiguously states that the ten-day training session was to take place "with Derrick." Moreover, all of the other days of training involved both Derrick and his intervener. For these reasons, the court concludes that October 4 and 5, 2006 may not count as training days for the purpose of complying with the preliminary injunction order's ten-day requirement.

Therefore, as the court noted in its statement of facts, Ms. Telleck provided nine days of training: November 9, 10, 13, 14, 15, 16, and 17, 2006, as well as on January 18 and 19, 2007. Although the School District must provide one more day of training to complete the ten-day training required, the court will not find Defendant to be in contempt at this time. The court finds Defendant's attempts to comply with the preliminary injunction order were diligent and reasonable. *See Terry*, 886 F.2d at 1341; *Harris*, 47 F.3d at 1324. One week after the court's September 1, 2006 order, the School District identified and hired a qualified trainer and was prepared to implement the requisite intervener training. Throughout September and October, 2006, Defendant continued to propose alternative training dates and work with Plaintiffs to establish a mutually agreeable schedule.

In light of these facts, even though the School District technically did not provide all ten days of training required by the preliminary injunction order, the court cannot say that Defendant was anything but diligent in its attempt to do so in a reasonable manner. Therefore, Plaintiffs fail to meet their burden of showing otherwise by clear and convincing evidence. The court does not find Defendant to be in contempt on this ground.

However, recognizing that Derrick is still entitled to one day of training, the court will afford Defendant the opportunity to provide the tenth day of intervener training with Derrick in the school environment. The court does not anticipate that this will pose a problem, given the School District's attempts to comply with the training requirements to date. Also, given that issues regarding Ms. Telleck's qualifications and the transition plan have been resolved, the court does not expect further delays in the scheduling of the tenth training day.

### D.   Timeliness of Defendant's Compliance

Plaintiffs' briefs also raise concerns regarding the timeliness of Defendant's compliance with the court's preliminary injunction order. Again, the court notes that within a week of the order, Defendant proposed a plan in which it was prepared to execute the required training by October 2, 2006, which would have been just one day after the court's thirty-day deadline. Subsequent delays were directly related to Plaintiffs' disputes regarding a number of related issues including Ms. Telleck's qualifications and Derrick's transition plan.[8]

Defendant attempted to provide Plaintiffs with the requested information regarding Ms. Telleck's qualifications, first by providing a Bio and then by responding to specific questions posed by Plaintiffs' counsel.[9] In addition,

---

[8] Derrick returned to school once Plaintiffs were satisfied with Ms. Telleck's qualifications. Although the correspondence between parties' counsel also reflects disagreement over the status of the transition plan, it does not appear that such disputes continued to delay the start of training once concerns regarding Ms. Telleck were resolved. Accordingly, the court's analysis will focus on delays related to consideration of Ms. Telleck's experience.

[9] The court notes that although Mr. McCoy inquired about Ms. Telleck's certifications from any state administrative body or other organization, Mr. Russell's September 15, 2006 response was tailored to Pennsylvania state requirements. Because there is no "intervener" or related certification in
(continued...)

13

Derrick's parents had an opportunity to meet with Ms. Telleck in person.  However, Plaintiffs insisted on deposing Ms. Telleck before permitting any training to occur.  The court respects Plaintiffs' right to pursue this litigation as they choose and take whatever action they believe to be necessary in order to make their case, but the court will not hold Defendant responsible for any delays that occur as a result of Plaintiffs' choices.

On these facts, the court finds that Plaintiffs fail to establish by clear and convincing evidence that Defendant failed to diligently attempt to comply with the preliminary injunction order in a reasonable manner.  Therefore, the court will deny Plaintiffs' motion to compel with respect to the issue of timeliness of compliance.

**IV.**     **Conclusion**

For the foregoing reasons, the court will deny Plaintiffs' motion for civil contempt.  An appropriate order will issue.

                                                                        s/Sylvia H. Rambo
                                                                        SYLVIA H. RAMBO
                                                                        United States District Judge

Dated:  March 7, 2007.

---

[9](...continued)
Pennsylvania, the court finds Mr. Russell's response to be sufficient.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DERRICK F., a Minor, by his Parents and Natural Guardians, et al.,**

   **Plaintiffs,**

 v.

**RED LION AREA SCHOOL DISTRICT,**

   **Defendant.**

:
:
:
:
:
:
:
:
:
:
:
:

**Civil No. 1:06-CV-1463**

**JUDGE SYLVIA H. RAMBO**

## **ORDER**

  In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

  1) Plaintiffs' Motion for Civil Contempt of Court (Doc. 39) is **DENIED**.

  2) Defendant shall provide the tenth day of the ten-day training in the school setting, with Derrick, as ordered by the court on September 1, 2006. Defendant shall provide this training no later than March 30, 2007.

  3) The parties shall advise the court no later than March 16, 2007, whether they wish to continue to pursue mediation or if the court should proceed to the scheduling of a case management conference.

            s/Sylvia H. Rambo
            SYLVIA H. RAMBO
            United States District Judge

Dated: March 7, 2007.